IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AUTO USA, INC.,

 *

v.  *   Civil Action No. CCB-17-1312

DHL EXPRESS (USA), INC.   *

 *
***

**Memorandum**

  The plaintiff, Auto USA, Inc., has filed suit claiming that the defendant, DHL Express (USA), Inc. ("DHL") fraudulently or negligently misrepresented the terms of their shipping agreement, violated the Maryland Consumer Protection Act, committed constructive fraud, and intentionally concealed a material fact. DHL has moved to dismiss these claims as insufficiently pleaded. For the reasons stated below, DHL's motion will be granted.

**Background**

  The agreement at the heart of this complaint had its start on September 11, 2015, when David Shaulis, on behalf of DHL, made an offer to win Auto USA's international shipping business. (Compl. ¶¶ 9-10). Auto USA was not an easy sell; the company rejected DHL's initial offer and countered by requesting a 20% rebate on its shipping costs. (*Id.* at ¶ 11). This request was repeated on September 29, 2015, when Auto USA submitted a counter-offer requesting, among other things, a 20% rebate during a three month trial period with DHL. (*Id.* at ¶ 12). Shaulis was excited by Auto USA's counter-offer claiming it "was the best news" he "heard all day" and that his manager would review the terms which he felt DHL would "be able to accommodate." (*Id.* at ¶ 13). A little over a month later, the parties entered into a Shipping

Service Agreement, ("Agreement"), a contract that outlined the terms of the shipping arrangement, and included a rebate but not the 20% rebate Auto USA had requested during the negotiation. (*Id.* at ¶ 14; *Id.* at Ex. A ("Agreement")).[1]

Believing that it was entitled to a 20% rebate despite the contract's conflicting terms, Auto USA sent an email to DHL asking if the rebate could be included on their online invoice to simplify their accounting. (*Id.* at ¶ 15). Shaulis responded on behalf of DHL a month later saying that he would ask his boss about Auto USA's accounting inquiry. (*Id.* at ¶ 16). He did not, however, say that Auto USA's presumption that it was entitled to a 20% rebate was mistaken. A formal correction did not come until February 26, 2016, after Auto USA demanded the 20% rebate, when DHL disavowed the existence of any promise to provide a 20% rebate. (*Id.* at 17). DHL asserted that it never agreed to the 20% rebate, and the contract between the parties, which contains a different rebate, is the exclusive source of their respective obligations. (*Id.*). Auto USA sent one more letter concerning the 20% rebate to no avail. (*Id.* at ¶ 18).

Auto USA filed suit against DHL on May 12, 2017, claiming that the company fraudulently or negligently misrepresented the terms of the Agreement before and after it was signed. (ECF No. 1). DHL moved to dismiss the case for failure to state a claim. (ECF No. 6). For the reasons stated below, the court will grant the defendant's motion.

## Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

[1] The court may consider a document "attached to a motion to dismiss . . . when the document is integral to and explicitly relied on in the complaint." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (internal quotations omitted).

(2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). And the plaintiff typically must do so by relying solely on facts asserted within the four corners of his complaint. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015). When alleging fraud, however, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

**Analysis**

DHL argues that this court should dismiss Auto USA's claims because the plaintiff has not identified a false representation, DHL did not have a duty to disclose, nor did it, in any case, conceal anything from Auto USA, the Maryland Consumer Protection Act does not apply to commercial transactions, and the parties were not in a confidential relationship and therefore DHL cannot be liable for constructive fraud. For substantially these reasons, the court will grant DHL's motion to dismiss.

I.  Choice of Law

In its motion to dismiss DHL claimed that the choice-of-law provision in the shipping agreement controls this case and therefore Florida law applies. In supplemental briefing on the choice of law question, however, DHL chose not to argue that Florida law applies, instead asserting that Auto USA's suit should be dismissed even if Maryland law applies. (ECF No. 16).

Because Auto USA asserts causes of actions sounding in tort rather than contract law, Maryland law applies.

A court sitting in diversity applies the choice of law principles of the state in which it sits. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). This court must apply Maryland's choice of law rules which adopt the principle of *lex loci delicti*: "the law of the place where the tort or wrong was committed." *Laboratory Corp. of America v. Hood*, 911 A.2d 841, 844-45 (Md. 2006). The "place of wrong" is the place of injury. *See Erie Ins. Exchange v. Heffernan*, 925 A.2d 636, 648-49 (Md. 2007); *see also Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 231 (Md. 2000) (endorsing the view that "[t]he place of injury is the place where the injury was suffered, not where the wrongful act took place.").

Here, there is no question that the law of the place of injury applies. *See Wedeman v. City Chevrolet Co.*, 366 A.2d 7, 11 (Md. 1976) ("When one may be induced by fraud to enter into a contract, the tort in that instance cannot be said to arise out of the contractual relationship" but "the tortious conduct.") (abrogated by *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633 (Md. 1992) on different grounds). Because the place of Auto USA's alleged injury is Maryland, the company is incorporated and has its principal place of business in Maryland, and because it received and relied on the alleged misrepresentations in Maryland, Maryland law applies.

II. Intentional Misrepresentation[2]

Auto USA first claims that DHL committed fraud by "clearly acknowledge[ing] and accept[ing] Auto USA's 20% Rebate Proposal, and, despite numerous opportunities to do so,

---

[2] In Maryland, each of Auto USA's intentional misrepresentation claims—fraud & deceit; false representation; fraudulent inducement—are established by the same five elements. *See Sass v. Andrew*, 832 A.2d 247, 261-62 (Md. Ct. App. 2003); *see also Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 660 (Md. Ct. App. 2012) (applying the same to a claim for fraudulent inducement); *Brass Metal Products, Inc. v. E-J Enterprises, Inc.*, 984 A.2d 361, 386 (Md. Ct. App. 2009) (applying the same elements to a claim for intentional misrepresentation).

4

never denied and/or declined said rebate proposal until DHL's February 26, 2016 letter indicating such." (Compl. ¶ 21). Because DHL never misrepresented the rebate amount, and because even if it had Auto USA had no right to rely on the misrepresentation, this count will be dismissed.[3]

> To make out a claim for fraud Auto USA must show:
>
> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008). The reliance element is met only if it was reasonable for the plaintiff to have relied on the alleged misrepresentation based on "the background and experience of the party that relied upon the representation." *Goldstein v. Miles*, 859 A.2d 313, 333 (Md. Ct. App. 2004). "A person cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract to which the person is a signatory." *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 537 (D. Md. 2011).

The complaint identifies two communications to support Auto USA's intentional fraud claim. The first was DHL's response to Auto USA's September 2015 counter-offer, which included, among other things, a request for a 20% rebate. On behalf of DHL, Shaulis sent a letter back explaining that his manager would review the items in the counter-offer "which I feel we will be able to accommodate." (Compl. ¶ 13).

Shaulis' response could not reasonably be taken as an assurance that DHL's terms would be accepted. For one thing, Shaulis' statement was merely an opinion on the future success of

---

[3] To be sure, the complaint also fails to allege facts sufficient to plead that DHL knew its representations were false or was recklessly indifferent as to their falsity, and that DHL intended to defraud Auto USA.

Auto USA's counter-offer. An opinion on the happening of a future event is not a guarantee that the event will occur. A reasonable person "distinguishes between the sentences 'we believe X is true' and 'X is true,'" understanding that the former "convey[s] some lack of certainty as to the statement's content." *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 135 S. Ct. 1318, 1328 (2015); *see also Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 652 (D. Md. 2012). As a general rule, "a cause of action in fraud [cannot] be predicated on statements as to future events, as to expectations and probabilities, as to what will be or is intended to be done in the future, or mere expressions of opinion about what will occur in the future." *Dierker*, 888 F. Supp. 2d at 652 (internal citation omitted). For another, even if it was reasonable for Auto USA to believe that Shaulis's communication assured a 20% rebate, any such impression was corrected by Shaulis's own recognition that his opinion was no guarantee; he stated his manager would have to review the counter-offer before any decision was made. Since the "statement about future events" did not relate "to matters within the speaker's exclusive control" it cannot be used to "support a claim for fraud." *Dierker*, 888 F. Supp. 2d at 651 (internal quotation marks omitted).

But even if Shaulis's statement was not an opinion, and even if Shaulis did not state that his manager would have to review the terms the counter-offer, there is still the agreement itself, signed by Auto USA, which includes a rebate but not the 20% rebate Auto USA claims. Auto USA does not dispute the validity of the contract, or even claim that it signed the contract under duress or coercion. Rather, it was able to review the Agreement's terms and raise issues where it felt the Agreement failed to represent the deal it understood the parties made. In this way, the Agreement removes any doubt as to the rebate amount and extinguishes any latent ambiguity remaining in the parties' pre-agreement communications. At the very least, it renders reliance on

DHL's prior communications concerning the rebate unreasonable to the extent they contradict the express terms of the shipping agreement. Accordingly, even if DHL did make a false representation, it was not reasonable for Auto USA to rely on it in the face of a written agreement containing contrary terms.

Shaulis's January 2016 response to Auto USA's inquiry about the 20% rebate does not constitute fraud for the same reasons. According to the complaint, Shaulis stated that he would ask his manager about Auto USA's question and provide an update. This response represents nothing about the existence of the rebate. But even if Shaulis's failure to immediately deny the existence of the 20% rebate could implicitly represent that such rebate exists, that interpretation too must fail once one considers that Shaulis had already indicated that he is more spokesman than decision-maker, fielding communications from Auto USA before passing them to more senior employees for a decision. Taking the complaint as a whole, Shaulis's failure to deny the existence of the 20% rebate suggests his lack of authority to do so, not DHL's intention to defraud Auto USA.

Accordingly, Auto USA's claims for intentional fraud will be dismissed.

### III. Negligent Misrepresentation

Next, Auto USA claims that even if DHL did not intentionally misrepresent the nature of their agreement, it negligently did. To make out a claim for negligent misrepresentation in Maryland a plaintiff must show that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement; (2) the defendant intend[ed] that his statement w[ould] be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence.

7

*Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982).

For the reasons already stated, DHL did not assert a false statement, and even if it had, the plaintiff would not have been justified in relying on it. This claim will be dismissed.

IV. Unfair or Deceptive Trade Practices

Auto USA also asserts that DHL's conduct constitutes unfair and deceptive practices under § 13-303 of the Maryland Consumer Protection Act. The Act makes it unlawful to make a "[f]alse . . . or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." MD. CODE. COM. LAW § 13-301. By its terms the Act applies only to consumers, and not commercial entities. *See Baltimore Sports & Social Club, Inc. v. Sport & Social, LLC*, 228 F. Supp. 3d 544, 552 (D. Md. 2017).

Because Auto USA is a commercial entity, its claim under the Maryland Consumer Protect Act also will be dismissed.

V. Constructive Fraud

Auto USA claims that even if DHL did not intentionally or negligently misrepresent the rebate term in their shipping agreement, its communications still constitute constructive fraud. Auto USA asserts that DHL owed it a fiduciary duty to truthfully represent the terms of their contract. (Compl. ¶ 42).

To establish constructive fraud Auto USA must prove that the defendant "breach[ed] a legal or equitable duty to the plaintiff in a way that tend[s] to deceive others, to violate public or private confidence, or to injure public interests." *Thompson v. UBS Financial Services, Inc.*, 115 A.3d 125, 138 (Md. 2015) (internal quotation marks omitted). "[A] defendant owes an equitable

duty to a plaintiff where the parties are in a confidential relationship," *id.*, a relationship which exists "where the defendant 'has gained the [plaintiff's] confidence . . . and purports to act or advise with the [plaintiff]'s interest in mind,'" *id.* at 139 (quoting *Buxton v. Buxton*, 770 A.2d 152, 164 (Md. 2001). "Accordingly, a plaintiff and a defendant are in a confidential relationship only if the plaintiff depends on the defendant." *Id.* Although a "confidential relationship may exist in a business relationship," as "when there is a relationship independent of the business relationship," when businesses enter a "typical arm's length transaction . . . to further their own separate business objectives" no such relationship exists. *Brass Metal Products*, 984 A.2d at 357-58 (rejecting the existence of a confidential relationship between two businesses that entered an agreement for their own benefit).

There is nothing in the complaint to suggest that Auto USA depended on DHL or that DHL acted with the plaintiff's interests in mind. To the contrary, the complaint describes a typical business agreement: both Auto USA and DHL negotiated to secure terms suitable to their interest, making clear that at no moment was either working for the other's benefit. Accordingly, the parties were not in a confidential relationship, and DHL's motion to dismiss Auto USA's constructive fraud claim will be granted.

VI. Intentional Misrepresentation by Concealment

Finally, Auto USA claims that DHL fraudulently concealed the true terms of the shipping agreement. To prove fraudulent concealment a plaintiff must show that:

> [T]he defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

9

*Lloyd v. General Motors Corp.*, 916 A.2d 257, 274 (Md. 2007) (quoting *Green v. H & R Block*, 735 A.2d 1039, 1059 (Md. 1999)). Unless the parties were in a fiduciary relationship, "a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence." *Frederick Road Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 976 n.14 (Md. 2000).

For the reasons stated above, DHL did not conceal a fact from Auto USA. But Auto USA also has not alleged facts suggesting that reasonable diligence would not have revealed DHL's alleged deception; the contract that Auto USA signed expressly explained the rebate amount Auto USA could expect. The fact, if hiding at all, was hiding in plain sight.

## Conclusion

For the reasons stated above, the defendant's motion to dismiss will be granted. A separate order follows.

_____2/26/18_____  _____/s/_____
Date                                              Catherine C. Blake
                                                  United States District Judge